UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 12-CR-00146 |
| VERSUS | * | JUDGE FOOTE |
| RICHARD JOSEPH BUSWELL | * | MAGISTRATE JUDGE HANNA |

GOVERNMENT'S RESPONSE TO DEFENSE MOTION TO SUPRESS
STATEMENTS OBTIANED DURING QUESTIONING BY LAW
ENFORCEMENT WHILE THE DEFENDANT WAS INCARCERATED

NOW INTO COURT, through the undersigned Assistant United States Attorneys, comes the United States of America, who submits the following response to Defendant Richard Buswell's Motion to Suppress Statements Obtained During Questioning by Law Enforcement While the Defendant was Incarcerated (Rec. Doc. 250)[1]:

## I.    Introduction

The Defendant has moved to suppress statements that he made on April 5, 2012, during a recorded interview, which took place while he was incarcerated at the Iberia Parish Jail.  Due to the *Bruton* issues associated with the statements made by the defendant, the Government is not seeking to introduce these statements in its case in chief during the trial of this case.  The defendant's motion

---

[1]    Defendant Daniel James Stanford has filed a Motion to Adopt Defendant Buswell's Motion to Suppress. (Rec. Doc. 338)

is therefore moot; however, because of the seriousness of the defendant's allegations of Fifth and Sixth Amendment violations, the government is compelled to address his erroneous accusations.

Agents did not violate Buswell's Fifth Amendment Right against self-incrimination nor his Sixth Amendment right to counsel when they conducted a recorded interview with him on April 5, 2012.  Buswell was detained pursuant only to a federal indictment for violations of federal securities laws. Buswell's Fifth Amendment right against self-incrimination was not violated because agents properly advised Buswell of his rights pursuant to *Miranda* during the interview. Buswell's Sixth Amendment right to counsel was not violated because Buswell was only questioned concerning possible federal drug violations that were separate and distinct from the securities law violations for which Buswell was indicted and represented by counsel.   During the interview, the agents were very careful not to allow any conversation about the pending securities fraud case.   In fact, the defendant has not even contended that he was questioned about the pending securities fraud indictment. The right to counsel is offense specific and the Supreme Court has rejected any exception to that rule.  Since Buswell was not questioned about the pending federal securities fraud case, the only case for which he was formally charged at the time of the interview, Buswell's Sixth Amendment right to counsel was not violated.

## II.     Facts

On August 10, 2011, Richard Buswell was indicted by a federal grand jury in the Western District of Louisiana for violations of federal securities law. (6:11CR00198 Rec. Doc. 1). Daniel Stanford was retained by Buswell to represent him on those charges.  Buswell was initially released on pre-trial supervision.  On December 8, 2011, Buswell was arrested by local law enforcement officers for distributing synthetic cannabinoids. Buswell posted bond and was released from state custody the same day.[2]  On December 15, 2011, Buswell's pre-trial bond on the federal securities fraud charges was revoked and Buswell was remanded to the custody of the United States Marshall pending trial in the federal securities fraud case.  To date, the Lafayette Parish District Attorney's Office has not charged Buswell with violations of state controlled substance laws or with any offense that arose out of the investigation into the activities of the local Curious Goods franchise outlets.  The sole proceeding that has been filed by the District Attorney's Office is a civil forfeiture concerning various assets seized on December 8, 2011.

Prior to the April 5, 2012 interview of Buswell, Assistant District Attorney Alan Haney directed that local law enforcement officers personally serve Buswell with civil forfeiture paper work related to state seizures made on the day of Buswell's state arrest.  ADA Haney did not want to serve Daniel Stanford with

---

[2] The arrest of Buswell was pursuant to a State arrest warrant only obtained by officers with Lafayette Metro Narcotics, without any federal input or knowledge. However, to date, Buswell has not been charged in state court.

3

Buswell's paper work, due to the fact that Daniel Stanford was also a subject of their civil forfeiture investigation that involved Buswell and others. As a result, ADA Haney requested that Lafayette Police Department Officer William White personally serve Buswell with the civil forfeiture paperwork.  Officer White discussed the request with DEA Supervisory Special Agent (SSA) Donald DeSalvo who was supervising the federal investigation concerning synthetic drug trafficking. SSA DeSalvo contacted the U.S Attorney's Office and advised the undersigned of what ADA Haney had requested of Officer White.  After a meeting with the U.S. Attorney's Office, it was decided that SSA DeSalvo would accompany Officer White to serve the paperwork on Buswell. SSA DeSalvo was instructed by the undersigned that if Buswell elected to speak with them about the synthetic drug trafficking investigation they <u>must</u> 1) give Buswell proper *Miranda* advisement; and 2) not discuss nor permit Buswell to discuss in any way the federal securities fraud case pending against Buswell.

On April 5, 2011, SSA DeSalvo and Officer White met with Buswell at the Iberia Parish Jail and served Buswell with the forfeiture paperwork.  Buswell was advised of his *Miranda* rights and was instructed not to discuss any matter related to the pending federal securities fraud case.  Outside of discussions concerning the civil forfeiture documents, SSA DeSalvo and Officer White only talked with Buswell about matters related to DEA's synthetic drug trafficking investigation.  At no time did DeSalvo or White talk with Buswell concerning any specific matter for which Buswell was already formally charged.  On April 24, 2011, at the request of ADA

4

Haney, Officer White and Detective Ryan Shanahan of the Lafayette Police

Department served Buswell with additional civil forfeiture paperwork.  The officers

did not record that interview. The U.S. Attorney's office was not consulted prior to

this decision being made.

### III.    Law and Argument

**A) Agents did not violate Buswell's Fifth Amendment right against self-incrimination when they questioned Buswell on April 5, 2011, since they properly advised Buswell of his rights pursuant to *Miranda*.**

*Miranda* holds that any statement stemming from the custodial interrogation

of a suspect is presumed involuntary and thus inadmissible unless an interrogating

officer gives a suspect the following warning: (1) that the suspect has the

constitutional right to remain silent; (2) that anything he says can and will  be used

against him in court; (3) that he has the right to confer with counsel before

answering any questions and to have counsel present during the questioning itself;

(4) that if he is indigent, he has the right to have appointed counsel present.

*Miranda v. Arizona*, 384 U.S. 436, 467-73, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

There is no burden on police beyond the administration of these warnings.

In order to validly waive the Fifth Amendment privilege against self-

incrimination, an individual's waiver must be voluntary in that it cannot be the

product of intimidation, coercion, or deception.  *Hopkins v. Cockrell*, 325 F.3d 579,

583 (5th Cir. 2003).  The voluntariness of a *Miranda* waiver is analyzed using the

same guidelines as are used to determine the voluntariness of statements.  See

*North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979);

*Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Consequently, the test is whether the waiver is voluntary in the totality of circumstances, and waivers can be voluntary despite the presence of negative factors.  Proving that a confession was coerced requires a showing that the confession itself resulted from coercive police conduct.  *Id*. at 584.  It is essential that there be a link between the coercive conduct of the police and the statement of the defendant. *Id*.  Such conduct includes official overreach and direct coercion, as well as promises and inducements *United States v. Blake,* 481 Fed.Appx. 961 (5th Cir. 2012) (unpublished) (per curiam).  Trickery or deceit only constitutes coercion "to the extent [the defendant is deprived] of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Hopkins*, 325 F.3d at 584.

Buswell claims that SSA DeSalvo and Officer White were only serving Buswell with forfeiture paperwork as a subterfuge to speak with him about the synthetic drug trafficking investigation.  This is inaccurate.  Officer White was directed by ADA Haney to personally serve the civil forfeiture pleading on Buswell.[3] Upon learning of this, the undersigned instructed SSA DeSalvo and Officer White that if they spoke with Buswell, he had to be advised of his *Miranda* warnings and that they could not discuss with Buswell in any way the pending federal securities

---

[3]  The agents did believe that Buswell would likely try and speak with them regarding the synthetics conspiracy investigation, which is why, in part, they were prepared to record the interview.

fraud case because Buswell was represented and afforded Sixth Amendment protections on that matter.

In part to document the interview and demonstrate if need be on a later date that the agents did not violate Buswell's Fifth or Sixth Amendment rights, agents equipped themselves with a recording device.  A copy of that recording and transcript is attached to this response as Exhibit 1 and 1A.  For purposes of the Fifth Amendment, the recording clearly demonstrates that Buswell was properly advised of his Fifth Amendment rights against self-incrimination.  The recording also demonstrates that Buswell was at no time tricked or coerced into waiving his <u>Miranda</u> rights so that the agents could interview him.[4]

On pages one through eight of the attached transcript, SSA DeSalvo and Officer White painstakingly went through the civil forfeiture paperwork that ADA Haney had them serve, clearly demonstrating that the service of the forfeiture paperwork was not a subterfuge.  Once that was completed, they advised Buswell that before they could talk to him about the synthetic drug trafficking conspiracy

---

[4] Even if this court were to find that the serving of Buswell with civil forfeiture paperwork was used as quasi subterfuge to speak with him, there is nothing inherently wrong with that.  It is well established that a defendant can be deceived or tricked in the course of a Government investigation. *E.g., Illinois v. Perkins*, 496 U.S. 292,297, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990); *Hoffa v. United States*, 385 U.S. 293, 304, 87 S.Ct. 408, 17 L.Ed.2d 374 (1996); *United States v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004) (confession of incarcerated defendant voluntary and valid even though law enforcement officer lied to defendant that law enforcement possessed physical evidence proving defendant's guilt); *Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir. 1992). However, this was not the case here.

investigation, they had to advise Buswell of his rights.  The discourse with Buswell

concerning Buswell's *Miranda* advisement was as follows:

> DeSalvo :  Before, before…I will tell you this right now that we are by the
> book, we follow all of the rules.  We came here to serve you with this
> paperwork and basically, that's it.  We can talk to you about some of these
> other guys.  About Barry, about Boyd, and Josh which we are very much
> interested in.

> Richard Buswell:  Barry, #1…

> White:  Let him finish.

> Richard Buswell:  Oh, I'm sorry, go ahead.

> DeSalvo:  What we have to do is we are required, because you are in custody,
> to inform you of your rights. We have to.  If we didn't do that….

> Richard Buswell:  Go ahead, that's straight up.

> DeSalvo:  We have to follow the rules because if we don't, you know it's….

> Richard Buswell:  What are you going to do, put me in jail?

> DeSalvo:  Exactly, so…you know.

> White:  So before you answer any questions, you must understand that you
> have the right to remain silent.  Anything that you say can be used against
> you in court.  You have the right to talk to a lawyer for advice before we ask
> you any questions and to have a lawyer with you during questioning.  If you
> can't afford a lawyer, one will be appointed for you before any questions of
> you wish.  Do you understand?

> Richard Buswell:  Yes, sir.

> White:  Are you willing to answer the questions?

8

Richard Buswell:  Yes.

DeSalvo:  And in no way, shape or form are we in interested in anything about the ongoing case that you are here for.  We don't understand, we don't have jurisdiction or (inaudible).

Richard Buswell:  I am not here for that case.  You know what I am here for. Some dude said that I harassed him. Did you see that? And these are the lies.

White:  I don't like going to court unless I have to.

Richard Buswell:  From my standpoint (inaudible) a police officer (inaudible) who really (inaudible). These two people get up there and he admits to assault and battery, he put his hands on me in custody. It is a long story. I didn't do anything about it.  I am not going to do.  I am not going to get into a physical confrontation with him, a man, an older man especially with the court thing pending.  So then, after he shows up in the restaurant, (inaudible) he jumps all over, he is cursing and he is screaming. I am just like, dude, (inaudible) hands on me but mysteriously, that camera did not work that night.  Some agent got the video first and ran it.  Throughout that facility, that one camera that showed that the man got his hands on did not work that night.  Ok, so nonetheless, I am here for that.

DeSalvo:  That is why you are here?

Richard Buswell:  Yes, I am here so the guy does not have to beat me anymore in public.  I am protecting him from having to assault me anymore, it is safer in here…for him.

White:  So you understand your rights.

Richard Buswell:  Oh absolutely.

White:  And we have not made any promises or anything to you.

Richard Buswell:  I don't want promises.  I don't need a promise.

9

White:  Okay, just making sure.

It is clear from the transcript that Buswell was not tricked or coerced into waiving his *Miranda* rights.  SSA DeSalvo and Officer White went through Buswell's rights very carefully and made sure that he understood his rights. Buswell acknowledged that he understood his rights and elected to continue to speak with the agents concerning the synthetic drug trafficking investigation.  The agents did not trick, threaten or coerce Buswell in any way.  It is also clear from the transcript that the meeting with Buswell was cordial, non-threating, and certainly not deceitful.[5] As such, Buswell was in no way deprived of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.  *Hopkins*, 325 F.3d at 584.  Most importantly, in this Court's ruling on the *Garcia* hearing held in the federal securities fraud case, in analyzing the statements made by Buswell on April 5, 2012, the Court found, "no evidence that any of the statements made by Buswell were involuntary or coerced in any way." (WDLA Criminal Number: 11-cr-00198, Rec. Doc. No.109)   As such, this Court should find that Buswell made a knowing, intelligent and voluntary waiver of his Fifth Amendment right to remain silent and should find that no Fifth Amendment violation occurred.

---

[5] It is also clear on page one the transcript that Buswell was not handcuffed during the exchange. This is contrary to claims made by the defense contained within p. 5 of Rec. Doc. 250-1, that Buswell was brought into the room handcuffed.

One could also argue that the interview of Buswell was not "custodial" and as such, there was no requirement that his *Miranda* rights had to be given prior to questioning. It is well settled that service of a period of imprisonment, without more, is not enough to constitute *Miranda* custody. *Howes v. Fields*, --- U.S. ---, 132 S.Ct. 1181, 1191-92, 182 L.Ed.2d 17 (2012). Taking a prisoner aside for questioning as opposed to questioning the prisoner in the presence of fellow inmates does not necessarily convert a non-custodial situation into a custodial one in which *Miranda* applies. *Id*. at 1192. Additionally, the questioning of a prisoner about criminal activity that occurred outside of a prison also does not necessarily convert a non-custodial situation to one in which *Miranda* applies. *Id*. The Supreme Court in *Howes* explained, "When a prisoner is questioned, the determination of custody should focus on all of the features of the interrogation. These features include the language that is used in summoning the prisoner to the interview and the manner in which the interrogation is conducted." *Id*.

In *Howes*, the Supreme Court found that the Defendant in that case was not taken into custody for purposes of *Miranda* when he was escorted from his cell and interviewed in a conference room located within the prison by sheriff's deputies concerning allegations that had occurred outside of the prison. In *Howes* the defendant did not invite the interview or consent to it in advance, he was not advised that he was free to decline to speak with deputies, the interview lasted between five and seven hours and the interview continued well past the hour when the defendant generally went to bed. Further, in *Howes* the deputies were armed,

11

the defendant had to wait 20 minutes for an escort after deciding to end the interview and one deputy used a very sharp tone and profanity.  Because the defendant in *Howes* was told that if he did not want to cooperate he would have to go back to his cell and was told he could leave and return to his cell when he wanted to, along with the fact defendant was not physically restrained or threatened and was interviewed in a well-lit, average-sized conference room, the Supreme Court found that he was not in custody for the purpose of *Miranda*.

In the instant case, Buswell was interviewed in a conference room at the Iberia Parish Jail.  The conference room was well lit and selected because it was out of sight of the general prison population.  This room is often used by federal agents to talk to inmates in order to keep them safe.  It is well known that when inmates observe another inmate talking to law enforcement, it can create commotion within the facility and potentially cause an act of aggression against the interviewee. As demonstrated in the attached recording and transcript, the agents were professional and cordial with Buswell. Buswell was not restrained.  When listening to the interview of Buswell in its totality, it is clear that it was far less "custodial" for purposes of *Miranda* then that of the interview that took place with the defendant in *Howes*.

In light of the Supreme Court's decision in *Howes*, this court could examine the totality of circumstances that surrounded the April 5, 2011 interview of Buswell and conclude that the interview was not custodial and find that *Miranda*

advisement of Buswell was not even required, which further corroborates the fact that no Fifth Amendment violation occurred.

**B) The April 5, 2011 interview of Buswell did not violate his Sixth Amendment Right to Counsel.**

The Supreme Court has held that Sixth Amendment protection is offense specific and "cannot be invoked once for all future prosecutions." *McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); see also, *Texas v. Cobb*, 532 U.S. 162, 167,  121 S.Ct. 1335, 149 L.Ed.2d 321 (2001). Further, Sixth Amendment rights do not attach until prosecution has commenced, meaning "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2291, 81 L.Ed.2d 146 (1984), (quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality opinion); *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (Sixth Amendment right to counsel does not attach until the defendant has been charged and had his initial appearance before a judicial officer).

In Cobb, the Supreme Court held that the Sixth Amendment right to counsel attaches **only** to formally charged offenses, rejecting an exception for uncharged crimes that are "factually related" to a charged offense.  *Cobb*, 532 U.S. at 173.  In accordance with the double jeopardy standard of *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Sixth Amendment right to

counsel prevents government agents from encountering defendants on formally

charged offenses, but not on offenses for which they have not been formally charged.

*Id.*  Citing *Maine v. Moulton*, 474 U.S. 159, 179-80, 106 S.Ct. 477, 88 L.Ed.2d 481

(1985), the Supreme Court explained;

> The police have an interest in the thorough investigation
> of crimes for which *formal charges* have already been
> filed.  They also have an interest in investigating new or
> additional crimes.  Investigations of either type of crime
> may require surveillance of individuals already under
> indictment. Moreover, law enforcement officials
> investigating an individual suspected of committing one
> crime and *formally charged* with having committed
> another crime obviously seek to discover evidence useful
> at a trial of either crime.  In seeking evidence pertaining
> to *pending charges*, however, the Government's
> investigative powers are limited by the Sixth Amendment
> rights of the accused....On the other hand, to exclude
> evidence pertaining to charges as to which the Sixth
> Amendment right to counsel had not attached at the time
> the evidence was obtained, simply because other charges
> were pending at that time, would unnecessarily frustrate
> the public's interest in the investigation of criminal
> activities.

*Cobb*, 532 U.S. at 170-71 (emphasis in original).

The Supreme Court emphasized the public's interest in law enforcement

agents investigating additional, uncharged crimes committed by already charged

defendants, explaining that "it is critical to recognize that the Constitution does not

negate society's interest in the ability of police to talk to witnesses and suspects,

even those who have been charged with other offenses." *Cobb*, 532 U.S. at 171-72.

On April 5, 2011, Buswell was not charged with Conspiracy to Distribute a Controlled Dangerous Substance Analogue, he was not charged with Money Laundering Violations to promote the same, and Buswell was not charged with Conspiracy to Introduce and Cause to Be Introduced Misbranded Drugs into Interstate Commerce (a crime which is only a federal violation).  At the time Buswell was interviewed by agents, he was only *formally* charged with violations of federal securities law.  This was the only specific offense for which Buswell's Sixth Amendment right to counsel had attached.  The attachment of Buswell's Sixth Amendment Right to counsel for the federal securities fraud violations was an offense specific attachment of these rights and not a blanket attachment of Sixth Amendment rights for all other non-charged offenses. *McNeil,* 501 U.S. at 175; see also*, Cobb*, 532 U.S. at 167. Under the *Blockburger* test, the federal securities fraud violation for which Buswell was federally indicted and detained, are clearly separate offenses from the potential drug related violations that was the subject matter of Buswell's interview on April 5, 2011, because they clearly require proof of a fact which the other does not. *Blockburger,* 284 U.S.  at 304.

In *United States v. Heinz*, the Fifth Circuit made it clear that the Sixth Amendment right to counsel does not attach until or after the time formal adversary judicial proceedings have been initiated.  *United States v. Heinz*, 983 F.2d 609, 612-13 (5th Cir. 1993) *citing Gouveia,* 467 U.S. at 187–190, 104 S.Ct. at 2297–2299 (Rehnquist, J.), and authorities cited therein; *McNeil,* 111 S.Ct. at 2207–2211 (Scalia, J.). *See also United States v. Johnson,* 954 F.2d 1015, 1019 (5th Cir.1992);

15

*United States v. McClure,* 786 F.2d 1286, 1290–1291 (5th Cir.1986).  The Fifth Circuit further found, "This is so despite the fact that some earlier Supreme Court cases seem to imply that a more functional test for the attachment of the Sixth Amendment right to counsel is appropriate." *Compare e.g., Moulton,* 474 U.S. at 168–170, 106 S.Ct. at 483–484;. *Gouveia,* 467 U.S. at 189, 104 S.Ct. at 2298 (Sixth Amendment right to counsel does not attach until such time as the " 'government has committed itself to prosecute, and ... the adverse positions of government and defendant have solidified' ") (quoting *Kirby,* 406 U.S. at 689, 92 S.Ct. at 1882.

As demonstrated by the attached recording and transcript, SSA DeSalvo and Officer White did not question Buswell concerning any matter related to the pending federal securities fraud case and made sure that Buswell did not discuss it even without provocation.  They clearly stayed within the bounds of the law and did not question Buswell about any specific matter for which Buswell's Sixth Amendment right to counsel had attached.

**C) Conclusion**

Buswell made a knowing, intelligent and voluntary waiver of his Fifth Amendment right to remain silent after properly being advised of his rights per *Miranda.*  In addition, The April 5, 2011, interview of Buswell was not custodial and as such, SSA DeSalvo and Officer White were not required to advise Buswell of his *Miranda* rights as they did.  Finally, Buswell's Sixth Amendment right to counsel had not attached to the specific offenses about which Buswell was questioned during the April 5, 2011, interview. As a result, Buswell's Sixth

16

Amendment right to counsel was not violated.  Nevertheless, because the United States will not seek to introduce this interview in its case in chief, the United States proposes that this Honorable Court deny the Motion to Suppress as moot.

Respectfully submitted,

STEPHANIE A. FINLEY
United States Attorney

s/J.  Collin Sims
J.  COLLIN SIMS, Bar No.  30727
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501-6832
Telephone:  337-262-6618

s/John Luke Walker
JOHN LUKE WALKER, Bar No. 18077
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501-6832
Telephone:  337-262-6618

<u>CERTIFICATE</u>

I hereby certify that on April 15, 2013, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the court's electronic filing system.

s/John Luke Walker
JOHN LUKE WALKER
Assistant United States Attorney

17