# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **CASE NO. 6:12-cr-146(3)** |
| **Plaintiff,** : | |
| : | **JUDGE ELIZABETH FOOTE** |
| **v.** : | **MAGISTRATE JUDGE PATRICK HANNA** |
| : | |
| **THOMAS W. MALONE JR.** : | |
| : | |
| **Defendant.** : | |

**DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. §3582(c)(1)(A)(i)**

Now comes the Defendant, Thomas William Malone, Jr., by and through undersigned counsel and pursuant to 18 U.S.C. 3582(c)(1)(A)(i) for an order granting his compassionate release and reducing his sentence to time served. This motion should be granted due to the "extraordinary and compelling reasons" brought on by the pandemic of COVID-19 and the fact that Mr. Malone, at age 53 , is not a danger to the community; suffers from very serious medical issues that make him more likely to contract COVID-19; and further because respect for the law and general deterrence would not be undermined by reducing the remainder of his sentence to time served with a period of supervised release. As will be demonstrated in this Motion, many Courts around the Country have taken this approach for inmates in similar positions as Mr. Malone.

Counsel for Thomas Malone Jr. stresses that this Motion is time sensitive. Yesterday, April 12, 2020, the News Observer reported that an inmate at Butner has died from COVID -19. https://www.newsobserver.com/news/coronavirus/article241957041.html. Same article reported that Richard Rootes, the inmate who passed away, contracted COVID-19 and went into respiratory failure, as early as March 26th. *Id.* As of 5:30 pm on April 12, 2020, "more than 80 people,

1

including 22 employees, had tested positive at the Butner prison complex." *Id.* News of the inmate's death was also reported in the local news, by WBTV. https://www.wbtv.com/2020/04/12/inmate-nc-prison-dies-coronavirus/

## INTRODUCTION

Alongside of Mr. Malone's medical records, that are available for inspection, court records as old as Mr. Malone's presentence investigation, demonstrate that Mr. Malone had a liver transplant in 1996 and is on immunosuppressant medication. He also suffers from Type II Diabetes, high blood pressure, and has cancer of the eye which has drastically progressed, and has not been properly treated during his time at FCI Butner. Moreover, Mr. Malone has L5-S1 stenosis of the spine, and a bone spur compressing his spinal cord. This is hindering his movement and making it extremely difficult to function. Pursuant to studies approved by the CDC, specifically transplants requiring immunosuppressant drugs, cancers, and Type II diabetes make Mr. Malone more likely to contract COVID-19 and also more likely to never recover, if he does contract it. (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.) While adequate punishment is certainly a goal of sentencing, a potential death sentence due to COVID -19 was certainly never contemplated when a proper sentence for Mr. Malone was determined.

Since, January of 2020, COVID -19 has spread widely in the United States. It has now been detected in all 50 states, District of Columbia, Guam, Puerto Rico, and U.S. Virgin Islands. The number infected and death toll keeps rising, but the numbers are certainly still understated, as the United States has not yet performed enough tests to accurately capture the true scope of this disease within its borders. The over-all trend On March 13, 2020, the President of the United States declared a national emergency pursuant to the National Emergencies Act ( 50 U.S.C. §1601, et

2

sez.) because the COVID-19 pandemic in the United States constitutes a national emergency beginning March 1, 2020. Similarly, the governor of North Caroline declared a state on March 10, 2020. Since that time, the governor has limited gatherings of people, closed restaurants and bars to on premise consumption, and closed retail and entertainment venues. On April 6, 2020 and according to WBTV (https://www.wbtv.com/2020/04/07covid-cases-federal-prison-butner-jump-five-days/)  FCI Butner where Mr. Malone is incarcerated had reported a jump from 9 to 59 cases of COVID-19 in six days. Six days later, that number increased to 80, and included a fatality. In granting Ronald Lee Miller's motion for compassionate release from FCI Butner, where Mr. Malone is also incarcerated, the Honorable Judge Arthur Tarnow noted that in North Carolina, the number infected with COVID 19 has grown from 763 on March 27th to 3,651 on April 9th, "quadrupling in less than two weeks." *United States v. Miller,* No. 2:16 cr 20222(1), ECF No. 385. (E.D.M. April 9, 2020) citing N.C. Exec. Order No. 121 (March 27, 2020), https://files.nc.gov/governonr/documents/files/EO121-Stay-at-Home-Order-3.pdf.  The Judge further ruled that time was not on the Defendant's side and "[i]t is paramount to his safety to decide the issue promptly. Therefore, his request for release is properly before the Court" *Id* at 7.

In further examining the atmosphere at FCI Butner, inmates are more susceptible to contract COVID -19 from others because rather than enforcing any form of social distancing, the prison has emptied one of its four units, and spread the inmates over the remaining three units. Mr. Malone's unit in particular received an additional 23 people. Currently a unit designed to house 38 individuals, houses 93 individuals. Moreover, the prison has placed everyone on lock down, and are not even allowing inmates to walk out of the housing unit, to distance themselves from potentially infected individuals. Time allowed outside has been drastically limited. Mr. Malone has attempted to convert a bandana into a face mask, to take what little precaution he can. It is

nearly impossible to lower risk of contraction when a unit houses three times the amount of people it is supposed to house and without the ability to walk outside, the inmates are all breathing recirculated air. With five shower, four toilets and two phones for 93 people, it is impossible to maintain proper hygiene and the precautions suggested by the CDC. FCI Butner has done the exact opposite of what is being recommended by every single health professional in the Country, the CDC, the President of the United States, and the governor of North Caroline, and rather than enforcing distancing, has crammed even more prisoners into a tighter space.

Courts all over the Country, in various procedural postures, are acknowledging the reality of the danger of COVID-19 in detention facilities. When looking at similar Motions that included uncontroverted evidence provided in sworn statements by medical experts, **attached hereto as Exhibit A**, the Orders of the Courts have overwhelmingly established that it is safer for not only for the inmate applying for compassionate release, but also other inmates, and the entire community, for inmates like Mr. Malone, who is at high-risk of contacting COVID-19, and who poses no danger to others, are released from custody. [1] In light of the coronavirus pandemic, which prompts this requested relief, Mr. Malone's motion can be handled without oral argument, and on an expedited basis, so to save his life.

---

[1] See Xochihua-James v. Barr, No. 18-71460 (9th Cir. Mar. 23, 2020) (unpublished) (sua sponte releasing detainee from immigration detention "in light of the rapidly escalating public health crisis"); United States v Garlock, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) (citing "chaos" inside federal prisons in sua sponte extending time to self-surrender: "[b]y now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided"); United States v. Perez, 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19"); United States v. Stephens, 2020 WL 1295155, __F. Supp. 3d__ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); In re Manrigue, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("The risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail."); In re Request to Commute or Suspend County Jail Sentences, Docket No. 084230 (N.J. Mar. 22, 2020) (releasing large class of defendants serving time in county jail "in light of the Public Health Emergency" caused by COVID-19); see also United States v. Matthaei, 2020 WL 1443227, at *1 (D. Idaho Mar. 16, 2020) (extending self-surrender date by 90 days in light of COVID-19); United States v. Barkman, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) (suspending intermittent confinement because "[t]here is a pandemic that poses a direct risk if Mr. Barkman . . . is admitted to the inmate population of the Wahoe County Detention Facility"); United States v. Copeland, No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020).

## BACKGROUND AND CASE HISTORY

Mr. Malone entered a plea of guilty on September 4, 2012 to Count One of the Superceding Indictment, which charged him with Conspiracy to Distribute schedule 1 Controlled Substance. Mr. Malone was ultimately sentenced on December 16, 2014 to a term of 117 months in the custody of the Bureau of Prisons as to Count 1 of the Superceding Indictment. The Court further ordered that upon release, Mr. Malone is to be placed on supervised release for a period of three years. Mr. Malone self-surrendered to the Bureau of Prisons on January 28, 2015 and has been incarcerated ever since. Mr. Malone is currently incarcerated at FCI Butner Medium I in Butner, North Carolina. His federal registration number is 16060-035.

Defendant has been a model inmate, has engaged in more programming that is required by the prison system and is employed at UniCor as a production clerk. In the interest of complete transparency, Mr. Malone notes that during his entire stay at the prison, he received one shot, for tobacco use, immediately before the death of his father. Mr. Malone does not minimize the infraction, but at the time, he was fighting for furlough with the bureau of prisons and knew that his father could pass away any second from cancer; which he ultimate did.

In FCI Butner, due to his significant health issues, Mr. Malone is designated by the Bureau of Prisons as a Medical Level 3. Per the BOP's definition, this designated is made by the BOP's Office of Medical Designation and Transportation. The BOP has found Mr. Malone to be a fragile outpatient who requires frequent clinical contacts to prevent hospitalization for catastrophic events. The BOP further finds that Level 3 in mates require some assistance with activities of daily living.

## ARGUMENT

On April 4, 2020, Mr. Malone filed an administrative relief request with FCI Butner, likewise seeking compassionate release and requesting consideration for home imprisonment pursuant to the Cares Act. Mr. Malone was provided a document by his Counselor, showing that he is Eligible for First Step Act and his recidivism risk is minimal. **Both of the aforementioned documents are attached hereto as Exhibit B.** To date, Mr. Malone has received no other consideration or status update regarding his request, and as mentioned, the situation at FCI Butner is getting grimmer by the day.

In granting a Motion for Compassionate Release filed by Defendant Pedro Munoz in case 4:09-CR-0199-01 Under 18 U.S.C. §3582, the Honorable Judge Keith P. Ellison of United States District Court – Southern District of Texas relied on the notion that:

> a court may modify a defendant's sentence upon motion of the Director of the Bureau of Prisons or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of defendant's facility, whichever is earlier." 18 U.S.C. §3582 (c)(1)(A)(i). Upon such a motion, a court may modify a defendant's sentence after considering the factors set forth in §3553(a) to the extent applicable if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*United States v. Muniz*, No. 4:09 cr 0199(a), ECF No. 578. (S.D.T. March 30, 2020).

First in addressing the exhaustion requirement, the Defendant submits that due to Defendant's documented health issues and the current global health crisis cause by COVID-19, the exhaustion requirement should be waived in his case. The Second District has issued several opinions regarding the exhaustion requirement, specifically during the COVID-19 pandemic. The court in *United States v. Perez*, discussed exceptions to statutory exhaustion in context of motion for compassionate release in light of the COVID-19 pandemic, and noted that there are

three basses for waiver of an exhaustion requirement. *United States v. Perez*, No. 17 cr 513-3(AT), ECF No. 98 at 3-4 (S.D.N.Y. April 1, 2020.) In its decision the Court noted that "Even where exhaustion is seemingly mandated by statute…, the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir.2019) (citing McCarthy v. Madigan, 503 U.S. 140, 146-47 (1992)). There are three circumstances where failure to exhaust may be excused. "First, exhaustion may be unnecessary where it would be futile, either because agency decision makers are biased or because the agency has already determined the issue." *Id.* Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." *Id* at 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id.*

    Notably, in regard to Mr. Malone, all three exceptions apply. Here, even a few days, or a week of delay carries the risk of catastrophic health consequences to Mr. Malone. When results of delay are catastrophic health consequences, exhaustion would be futile, and any delay the agency may provide, would become inadequate because of such delay. Of course, Mr. Malone would be prejudiced by such delays. In *Bowen v. City of New York*, the Court held that irreparable injury justifying the waiver of exhaustion requirements exists where "the ordeal of having to go through the administrative process may trigger a severe medical setback." (internal quotation marks, citation, and alterations omitted) *Bowen v. City of New York*, 476 U.S. 467, 483 (1986). *New York v. Sullivan* further held that waiver was appropriate where enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even…death"). *New York v. Sullivan*, 906 F.2d 910, 918 (2d Circ. 1990). Similarly, to the ruling in *United States v. Perez*, " administrative exhaustion would defeat, not further, the policies underlying §35832(c)". *United States v. Perez*, No. 17 cr 513-3(AT), ECF

No. 98 at 3-4 (S.D.N.Y. April 1, 2020.) Lastly, the Bureau of Prisons has been on notice for months of the impending COVID-19 outbreak and has still been unable to adequately prepare for this emerging health crisis. This further shows that the prison is unable to handle the issues cause by COVID-19 and any further delay would cause grievous harm to Defendant, due to his significant health issues.

18 U.S.C. §3582 (c)(1)(A)(i) permits a sentence reduction upon a showing of "extraordinary and compelling reasons." The policy statement regarding compassionate release sets forth three circumstances that are considered "extraordinary and compelling reasons." U.S. Sentencing Guidelines, § 1B1.13(1)(A) & cmt.n.1.

As the Court in Muniz noted, "among these are the "medical conditions of the defendant," including where the defendant is "suffering from a serious physical or medical condition… that substantially diminishes the ability of the defendant to provide self-care within the environment of correctional facility and from which he or she is not expected to recover." See *Muniz* at 5 quoting § 1B1.13 cmt. 1. "The policy statement also requires that the defendant not pose a danger to the safety of the community." *Id.* citing § 1B1.13(2).

Further, although Congress never defined what constitutes an "extraordinary and compelling reason" for resentencing under 18 U.S.C. §3582 (c), the legislative history gives an indication of how congress intended the statute to be utilized by the courts. The Senate stressed that even after abolishment of federal parole, some individual cases may warrant a look after resentencing: "The committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, case in which other *extraordinary and compelling*

*circumstances* justify a reduction of an unusual long sentence. S. Rep. No. 98-225, 55-56 (1983)(emphasis added).

      Mr. Malone's motion has met every element of extraordinary and compelling reasons. We have all watched the spread of COVID-19 around the world and have been left helpless in stopping the its incursion. We now live in a country that has mandates social distancing and confines us to our homes to stop the spread of this disease. People's lives have literally been brought to a halt during this global pandemic. Notably, COVID-19 paints a much grimmer picture for individuals like Thomas Malone. Those with underlying medical conditions, such as the one the Defendant has, are much more likely to suffer complications and much more likely to incur fatal consequences of COVID-19. As previously mentioned, Mr. Malone had a liver transplant in 1996 and is on immunosuppressant medication. He also suffers from Type II Diabetes, high blood pressure, and has cancer of the eye which has drastically progressed. He is the exact type of individual that is more likely to experience potentially deadly complications of COVID-19.

      Defendant submits to the Court that release is warranted to avoid confinement in a densely populated prison that is housing 93 individuals in a unit designed to house only 38. Social distancing is absolutely impossible. Furthermore, employees of the prison are able to leave the facility and come back into the facility, increasing the chances of bringing COVID-19 into this dense population. As has been noted in the local news, employees of the prison have contracted COVID-19. The prison system is clearly unable to cope with this unprecedented, highly contagious and potentially fatal pandemic. "Nothing is more extraordinary and compelling than this pandemic." *United States v. Colvin*, No. 19 cr 179 (JBA), ECF No. 38 at 6 (D. C.) April 2, 2020 quoting *United States v. Rodriguez*, No. 2:03 cr 271, ECF No. 135 at 2

9

(E.D.P.A.  April 1, 2020.) The aforementioned Court granted compassionate release to a diabetic inmate and found that the Defendant "is unable to practice effective social distancing and hygiene to minimize her risk of exposure." The Court further ruled that "the risks faced by Defendant will be minimized by her immediate release to home, where she will quarantine herself. Continued exposure to the large population of FDC Philadelphia over the coming weeks would impose upon the Defendant additional, unnecessary health risk which can be minimized by her early release." Id. In the case at hand, Defendant is at an even greater risk due to being on immunosuppressant medications and the extreme growth of COVID-19 cases at FCI Butner.

Lastly, Defendant submits to the Court that the applicable §3553(a) facts support Defendant's request for compassionate release and that Defendant will not pose a threat to the community. The length of Defendant's incarceration adequately expresses the seriousness of the offense, deters criminal conduct, and protects the public under §3553(a)

Other than death penalty cases, few other types of cases present this potential of life or death consequences. It is rare that justice and mercy require the same result. See *Walker v. Martel*, 709 F.3d 925, 950-51 (9th Cir. 2013). As the risks are grave, the Defendant is asking the Court to find that extraordinary and compelling circumstances warrant his immediate release and find that he is not a danger the safety of others. Defendant is asking the court re-sentence him to time served, or in the alternative, time-served followed by a term of supervised release. Consistent with Orders of other Courts, that have granted similar motions for inmates in Mr. Malone's position; Defendant understands that the Court would further order his immediate quarantine upon release, and as such, Mr. Malone has arranged to be quarantined at his brother, Adam Malone's home at 8880 Huntcliff Trace, Atlanta Georgia 30350.

        Respectfully submitted,

        **SOROKA & ASSOCIATES, LLC**

        /s/ Roger Soroka
        Roger Soroka    (0082195)
        503 South Front Street, Suite 205
        Columbus, OH 43215
        Telephone:  (614) 358-6525
        Facsimile:  (614) 448-4487
        Roger@sorokalegal.com
        *Counsel for Defendant Thomas Malone Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of April 2020 I electronically filed the following with the Clerk of the Court, using the CM/ECF System, which will send notification of such filing to the following: Assistant US Attorney John Luke Walker at john.walker2@usdoj.gov; and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: n/a.

        /s Roger R. Soroka
        Roger R. Soroka, (#0082195)
        *Counsel for Defendant Thomas Malone Jr.*