UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 12-146-03 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| THOMAS MALONE | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Before the Court is a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), filed by the Defendant, Thomas Malone ("Malone"). Record Document 1318. The Government opposes Malone's motion. Record Document 1320. For the following reasons, Malone's motion is granted.

**I.    Background**

Malone was the co-owner of NutraGenomics Mfg L.L.C. which sold synthetic cannabinoids throughout the United States, including to a co-defendant in the Western District of Louisiana. Malone and others were charged with conspiracy to distribute and possess with the intent to distribute a controlled substance analogue; conspiracy to introduce and cause to be introduced misbranded drugs into interstate commerce; and conspiracy to commit money laundering. Malone agreed to cooperate and plead guilty to the count of conspiracy to distribute a controlled substance analogue in exchange for the dismissal of the remaining counts. In connection with his guilty plea, Malone admitted to distributing not less than 1400 kilograms and earning not less than $10,000,000 from the conspiracy. His guideline range was 135 to 168 months. Based on his substantial

1

assistance, the Court awarded a 30% reduction from the top of this range and sentenced him to 117 months of imprisonment followed by three years of supervised release. Malone reported to the Bureau of Prison's ("BOP") designated facility on January 28, 2015, and is currently housed at Federal Correctional Institution Butner Medium I. His projected release date is June 2, 2023.

Due to the coronavirus, Malone seeks a reduction of his term of imprisonment to a sentence of time-served. The World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared a global pandemic related to the spread of the COVID-19 virus, a strand of the novel coronavirus. The CDC has advised that persons over the age of sixty-five and those with certain underlying medical conditions are considered high risk and are particularly susceptible to contracting the virus. In light of this pandemic, the President of the United States declared a national emergency. The CDC and all health authorities have strenuously recommended social distancing as a means of limiting community spread of the virus. On a federal level, the President has advised against any gatherings of groups larger than ten people, and that is only when absolutely necessary.

The prison population is particularly at risk due to the conditions of confinement, the close contact of inmates, and the inability to maintain social distancing. Responding to this concern, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") "expand[s] the cohort of inmates who can be considered for home release." Pursuant to that provision of the CARES Act, United States Attorney General

William Barr issued an April 3, 2020, memorandum instructing the BOP to maximize transfer to home confinement of "all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated BOP facilities where COVID-19 is materially affecting operations." See Memorandum from Attorney General William Barr to Director of Bureau of Prisons, *The Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (April 3, 2020), https://www.justice.gov/coronavirus (last visited 4/13/2020).  The April 3 memo urged the BOP to undertake its review urgently and assess inmates with high risk factors for COVID-19 who would be appropriate candidates for release.  If they are deemed good candidates, the Attorney General instructed the BOP to immediately process the respective inmates and to immediately transfer those inmates to their homes, after a fourteen-day quarantine.  The BOP responded to confirm the urgency of the situation and announced that it is reviewing all inmates who satisfy the Attorney General's criteria for release.  It has committed additional resources to complete this task as quickly as possible.

In this case, Malone is fifty-three years old and suffers from several serious health conditions.[1]  He had a liver transplant in 1996 and is currently on immunosuppressant medications.  He also has Type II diabetes, high blood pressure, L5-S1 stenosis of the spine, and a bone spur compressing the spinal cord.  The latter condition hinders his physical movements and makes it difficult to function, according to Malone.  In addition,

---

[1] Malone's filing of this motion is deemed a limited waiver of his right to confidentiality in his medical records.

Malone has eye cancer which he contends has been improperly treated by the BOP. The BOP has classified Malone as "Care Level 3,"[2] which is defined as:

> outpatients who have complex, and usually chronic, medical or mental health conditions and who require frequent clinical contacts to maintain control or stability of their condition, or to prevent hospitalization or complications. They may require assistance with some activities of daily living (ADLs) that can be accomplished by inmate companions. Stabilization of medical or mental health conditions may require periodic hospitalization.

*Care Level Classification for Medical and Mental Health Conditions or Disabilities*, Federal Bureau of Prisons Clinical Guidance, May 2019, found at https://www.bop.gov/resources/health_care_mngmt.jsp (last visited June 5, 2020). Defense counsel has represented to the Court that Malone has been unable to receive treatment for his eye cancer because Duke University Hospital, where he is usually treated, is not currently seeing inmates.

Malone submits that his medical conditions place him at high risk for contracting or becoming severely ill from COVID-19. This risk is heightened by the procedures his prison has taken to address the coronavirus pandemic. According to Malone, Butner Medium I has emptied one of its four units and spread the inmates over the remaining three units, thereby increasing the number of inmates housed in each unit. See Record Document 1318, p. 3. He asserts that his unit is designed to house thirty-eight inmates, but currently houses ninety-three. These ninety-three inmates share five showers, four toilets, and two phones. He also alleges that the facility is on lockdown, thereby

---

[2] There are only four care levels within the BOP, Level 4 being the highest.

4

preventing the inmates from walking out of the housing unit to distance themselves from others.  Id.  Malone argues that his age, medical conditions, and the COVID-19 pandemic within a prison setting constitute extraordinary and compelling reasons to warrant his release from BOP.  He asks that his sentence be modified to a sentence of time-served.

In response, the United States argues that Malone is not entitled to the relief requested because he has failed to exhaust his administrative remedies with the BOP.  The Government's opposition did not address the merits of the request, that is, whether Malone has presented extraordinary and compelling reasons to warrant his release.[3]

## II.    Law and Analysis.

### A.    Exhaustion of Remedies

Malone has filed his motion for a sentence modification under the First Step Act of 2018.  He asks the Court to grant him compassionate release per 18 U.S.C. § 3582(c)(1)(A)(i).[4]  This allows for the modification of a term of imprisonment upon a

---

[3] Indeed, the Government's briefing is entirely devoted to exhaustion, as exemplified by its concluding sentence: "As the defendant has failed to exhaust his administrative remedies, his motion for compassionate release must be dismissed."  Record Document 1320, p. 9.

[4] It is important to distinguish between the CARES Act, on the one hand, and § 3582 as amended by the First Step Act on the other.  The CARES Act was the federal government's comprehensive response to the COVID-19 crisis and certain provisions addressed the release of eligible inmates in the prison population.  The CARES Act expanded the BOP's authority under 18 U.S.C. § 3624(c)(2) to release prisoners from custody to home confinement.

Section 3624(c)(2) authorizes the BOP to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted

finding that certain extraordinary and compelling reasons warrant a reduction in an inmate's sentence. As amended by the First Step Act in December of 2018, the compassionate release provision provides:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
>> (1) in any case—
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>
>>>> (i) extraordinary and compelling reasons warrant such a reduction . . .

---

under this paragraph." 18 U.S.C. § 3624(c)(2). The CARES Act, in turn, provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement. Thus, home confinement determinations rest with the BOP.

In this case, Malone seeks judicial relief under 18 U.S.C. § 3582, which permits the district court to reduce a prisoner's term of imprisonment under certain circumstances. Thus, the statute applicable to the Court's analysis here is § 3582, not the CARES Act and its expansion of § 3624(c)(2). And, according to Malone's unit manager, Malone is not eligible for home confinement under the BOP's CARES Act guidelines because he has had a disciplinary infraction—for tobacco—in the past twelve months. See Record Document 1321-1.

>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Although sentence reductions under § 3582 historically could be ordered only upon a motion by the Director of the BOP, the First Step Act of 2018 amended the statute to allow prisoners to petition the district courts as set forth above. However, as the statute makes plain, prior to filing a motion for release in the district court, a prisoner must first exhaust his administrative remedies either by fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release on his behalf, or by filing the motion with the court after a lapse of 30 days from the date of the warden's receipt of his request for release, "whichever is earlier." 18 U.S.C. § 3852(c)(1)(A).

Here, the exhaustion requirement has been satisfied. Malone filed his request with the warden on April 4, 2020. Record Document 1318-2, p. 1. That request has gone unanswered. The Government does not dispute this. In correspondence between Court staff, defense counsel, and the Assistant United States Attorney handling this matter, defense counsel alerted the Court that Malone's claim was now exhausted. In the face of that correspondence, the Government remained silent. Furthermore, the Court explicitly provided the Government with the opportunity to respond to supplemental briefing defense counsel filed into the record; the Government chose not to file a response. The Government has been put on notice of Malone's medical reasons for

seeking compassionate release, and the Government has decided not to dispute the merits of Malone's request.

The exhaustion issue having been resolved, the Court finds it has the authority to address the merits of Malone's request to modify his sentence under § 3582 and will turn to that inquiry now.

      B.      Extraordinary and Compelling Reasons

Subject to consideration of the § 3553(a) factors, section 3582(c)(1)(A) permits a reduction in Malone's term of imprisonment if the Court determines that extraordinary and compelling reasons warrant a reduction. The reduction, however, must be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Turning to the Guidelines, U.S.S.G. § 1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A), explains that a reduction is authorized when the court determines that extraordinary and compelling reasons exist and the defendant is not a danger to the safety of any other person or the community. Under § 1B1.13 Application Note 1, the following are deemed extraordinary and compelling reasons: (1) defendant's

medical condition;[5] (2) defendant's age;[6] (3) family circumstances;[7] or (4) other reasons. U.S.S.G. § 1B1.13, cmt. n.1. "Other reasons" is a catchall category defined as "extraordinary and compelling reasons other than, or in combination with" medical condition, age, or family circumstances as "determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, cmt. n.1(D).

Here, it is conceivable that Malone's circumstances may satisfy the medical condition prong of compassionate release. It would seem that liver disease, eye cancer, type II diabetes, and spinal stenosis or compression of the spine each independently constitute a serious physical or medical condition. Cumulatively, they certainly pass the bar. But, the Court is uncertain of whether and to what extent these conditions substantially diminish Malone's ability to provide self-care in the prison environment and whether he is expected to recover from any of them. U.S.S.G. § 1B1.13, cmt. n.1(A). The Court lacks the requisite medical documentation to make such a determination at this

---

[5] The defendant must be suffering from a terminal illness, or (1) a serious physical or medical condition, (2) a serious functional or cognitive impairment, or (3) deteriorating physical or mental health because of the aging process, which substantially diminishes the defendant's ability to provide self-care in the prison environment and from which the defendant is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A).

[6] Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his term of imprisonment, whichever is less. U.S.S.G. § 1B1.13, cmt. n.1(B).

[7] Family circumstances requires the death or incapacitation of the caregiver of the defendant's minor child or children or the incapacitation of the defendant's spouse or registered partner where the defendant is the only available caregiver for him or her. U.S.S.G. § 1B1.13, cmt. n.1(C).

stage and thus concludes that Malone has not satisfied his burden of proof under Application Note 1(A).

The Court next turns to the only other potentially applicable provision—the catchall category found in 1(D). As previously stated, this category allows release under extraordinary and compelling circumstances "as determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, cmt. n.1(D). In addressing this language, a sister court in the Eastern District of Louisiana reasoned,

> [T]he Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act and, consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended. The relevant policy statement continues to plainly provide that a term of imprisonment may be reduced only upon a motion by the Director of the BOP upon a finding of extraordinary circumstances warranting a sentence reduction and a determination that the defendant is not a danger to the safety of any person or the community at large. U.S.S.G. § 1B1.13 cmt. n.4. This discrepancy has been recognized by many courts. See United States v. Perdigao, 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (collecting cases).
>
> Many courts have concluded that this discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act. See, e.g., United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). These district courts have found that they have discretion to determine what constitutes "extraordinary and compelling reasons" on a case by case basis, and reliance on the policy statement may be helpful, but not dispositive. See id. ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."); United States v. Cantu, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("[W]hen a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief.").

10

United States v. Mazur, 2020 WL 2113613, *2 (E.D. La. May 4, 2020).  This reasoning is well-founded and persuasive.  The Court agrees that the policy statement provides a helpful framework for compassionate release decisions, but it is not conclusive given the recent statutory changes.  Thus, the Court concludes that it has the power to determine whether, in the instant case, Malone has presented extraordinary and compelling reasons to warrant his release.  This assessment, of course, must also take into account the § 3553(a) factors and a determination of whether Malone poses a danger to the safety of any other person or the community.

A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant.  The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances.  However, Malone has presented the Court with convincing reasons wholly specific to him, his medical condition, and the conditions of confinement he is experiencing.  Malone has at least three of the CDC risk factors that place him at a higher risk of serious illness from COVID-19:  he is immunocompromised due to his liver transplant,[8] he has been undergoing treatment for eye cancer, and he has diabetes.  See Ctr. for Disease Control and Prevention, *People Who Are at Higher Risk for Severe Illness*,  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

---

[8] Malone takes twice daily medication to prevent his body from rejecting his liver.  See Record Documents 1321-1 and 1012, p. 12.

11

precautions/people-at-higher-risk.html (last visited June 1, 2020). Aside from these health concerns, he also suffers from spinal stenosis which is a serious condition that impacts his ability to move.

While the record lacks medical documentation to explain the full extent of Malone's medical and physical issues and the concomitant impact on his daily activities, it is undisputed that the BOP designated Malone as Care Level 3. And, again, the Government has not disputed any of Malone's assertions as to his medical conditions, the severity thereof, or his current treatments. Further, the presentence report corroborates much of what Malone has represented, and in fact, also mentions a diagnosis of hepatitis C. The CDC reports that those with chronic liver disease, including hepatitis B and hepatitis C, may be at higher risk of serious illness from COVID-19. See Ctr. for Disease Control and Prevention, *What to Know About Liver Disease and COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html (last visited May 30, 2020). Significantly, Malone's continued incarceration during the COVID-19 pandemic prevents his cancer treatment, as Duke has stopped treating inmates at this time. Thus, it is possible that because of the pandemic, Malone is being denied adequate treatment for a very serious medical condition.

Malone's conditions of confinement further support his request for release. FCC Butner, which is comprised of four facilities, has been battling an active coronavirus outbreak for some time now. The BOP's website shows that Malone's facility, FCI Butner

Medium I, currently has thirty-one active inmate and four staff cases.[9] Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (last visited June 7, 2020). Each of the other three facilities at FCC Butner also have active COVID-19 cases. The most seriously affected is FCI Butner Low, which reports 440 inmate and seven staff cases. See id.   Malone contends that the BOP's response to the pandemic has been to empty out one entire unit, thereby increasing crowding in his unit.  The Court understands each BOP facility is battling the pandemic the best it can with the resources it has available.  The Court also recognizes that the BOP has made "extensive and professional efforts to curtail the virus's spread," see United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020), and that its operational procedures have been modified to combat any further spread.  Nonetheless, it is understandably concerning that at a time when social distancing is critical, FCI Butner Medium I is housing ninety-three inmates in a thirty-eight-person unit where the inmates share five showers, four toilets, and two phones. While this is worrisome for all of the inmate population, it is more so for those high-risk individuals like Malone.  Given these conditions, Malone's health conditions, and the impossibility of social distancing in a prison setting, Malone's continued incarceration poses a real threat to his health and safety.  As such, the Court finds that Malone has presented extraordinary and compelling reasons to warrant his release.[10]

---

[9] This number was higher little more than ten days ago—forty-five inmates and five staff—based on the Court's continuing review of the statistics.

[10] This Court is not alone in making such a determination. As one court in the Northern District of Iowa expressed in cataloging cases that have found extraordinary and compelling reasons warranting compassionate release: "Since the beginning of the

13

COVID-19 pandemic, numerous courts have held that a defendant's health conditions and the presence [of] COVID-19 within BOP facilities constitute extraordinary and compelling reasons for compassionate release. See, e.g., United States v. Lopez, No. 18-CR-2846 MV, 2020 WL 2489746, at *3 (D.N.M. May 14, 2020) (defendant was 62 years old and suffering from high blood pressure and type II diabetes); United States v. Handy, No. 3:10-cr-128-8 (RNC), 2020 WL 2487371, at *1 (D. Conn. May 14, 2020) (defendant was 53 years old and suffering from congestive heart failure, hypertension, obesity and chronic knee issues); United States v. Ginsberg, No. 14 CR 462, 2020 WL 2494643, at *2 (N.D. Ill. May 14, 2020) (defendant was 56 and had a history of cardiac and respiratory disease); United States v. Gutman, No. RDB-19-0069, 2020 WL 2467435, at *2 (D. Md. May 13, 2020) (defendant was 56 and suffering from multiple sclerosis and hypertension); United States v. Rivernider, No. 3:10-cr-222 (RNC), 2020 WL 2393959, at *1 (D. Conn. May 12, 2020) (defendant was 54 and suffering from diabetes, heart disease and hypertension); United States v. Ullings, No. 1:10-cr-00406, 2020 WL 2394096, at *1 (N.D. Ga. May 12, 2020) (defendant was 66 and suffering from hypertension and obesity); United States v. Reddy, No. 13-cr-20358, 2020 WL 2320093, at *1 (E.D. Mich. May 11, 2020) (defendant was 73 years old and suffering from type II diabetes, hypertension and orthopedic problems); United States v. Foreman, No. 3:19-cr-62 (VAB), 2020 WL 2315908, at *3 (D. Conn. May 11, 2020) (defendant was 58 years old and suffering from hypertension and obesity); United States v. Simpson, No. 11-cr-00832-SI-3, 2020 WL 2323055, at *1 (N.D. Cal. May 11, 2020) (defendant was 62 years old and suffering from asthma and diabetes); United States v. Valencia, No. 15 Cr. 163 (AT), 2020 WL 2319323, at *1 (S.D.N.Y. May 11, 2020) (defendant was suffering from heart disease, high blood pressure and epileptic seizures); United States v. Joseph, No. 18-cr-00350-BLF-1, 2020 WL 2315806, at *1 (N.D. Cal. May 8, 2020) (defendant was 60 years old and suffering from lung scarring resulting from coccidioidomycosis); United States v. Pena, No. 15-cr-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) (defendant was 60 years old and suffering from hypertension and hyperlipdermia); United States v. Amarrah, No. 17-20464, 2020 WL 2220008, at *4 (E.D. Mich. May 7, 2020) (defendant was 45 years old and suffering from type II diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea and asthma); United States v. Diep Thi Vo, No. 15-cr-00310-BLF-2, 2020 WL 2300101, at *3 (N.D. [Cal.] May 7, 2020) (defendant was 74 years old and suffering from hyperlipidemia, hypertension, vision issues and osteoarthritis); Casey v. United States, No. 4:18-cr-4, 2020 WL 2297184, at * (E.D. Va. May 6, 2020) (defendant was 76 years old and suffering from serious cardiac issues); United States v. Howard, 4:15-CR-00018-BR, 2020 WL 2200855, at *3 (E.D.N.C. May 6, 2020) (defendant was 52 years old and suffering from COPD, type II diabetes, obesity, stage 3 kidney disease, edema and a diaphragmatic hernia); United States v. Quintero, No. 08-CR-6007L, 2020 WL 2175171, at *1 (W.D.N.Y. May 6, 2020) (defendant was suffering from diabetes, a compromised immune system, obesity and hypertension); United States v. Saad, No. 16-20197, 2020 WL 2251808, at *5 (E.D. Mich. May 5, 2020) (defendant was 71 years

The Court must now determine whether Malone presents a danger to the "safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) requires the Court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large that would be posed by the defendant's release. 18 U.S.C. § 3142(g). As discussed above, Malone engaged in a conspiracy to distribute synthetic cannabinoids throughout the United States. This is plainly a very serious offense. However, the conspiracy involved no weapons and the defendants engaged in no violence, which is fairly uncommon in drug cases in this Court's experience. At the time of sentencing, Malone was a criminal history category I, having amassed zero criminal history points. Record Document 1012, p. 10. He previously battled drug addiction but engaged in treatment and, according to the presentence report, has been sober since 2004. See id. at p. 13. The BOP assessed his recidivism risk as minimal. Record Document 1318-2, p. 3. The Government has not asserted that Malone would pose a danger to himself, any other person, or the community if released. Thus, the Court finds that the § 3142(g) factors support Malone's release.

---

old and suffering from chronic kidney disease, hypertension, pulmonary hypertension, sleep apnea and shingles); United States v. Reid, No. 17-cr-00175-CRB-2, 2020 WL 2128855, at *1 (N.D. [Cal.] May 5, 2020) (defendant was 71 years old and suffering from Valley Fever, hypertension and high cholesterol and is a prostate cancer survivor); United States v. McCarthy, No. 3:92-CR-0230 (JCH), 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020) (defendant was 65 years old and suffering from asthma and COPD)." United States v. Smith, 2020 WL 2844222, at *10 (N.D. Iowa June 1, 2020).

The Court must next consider the 18 U.S.C. § 3553(a) factors, including (1) the nature and circumstances of the offense and the history and characteristics of the defendant;[11] (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the offense; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution. 18 U.S.C. § 3553(a). In the context of compassionate release motions, other courts are also considering the risk of recidivism the defendant poses, the time remaining on his sentence, the quality of his release plan, and the impact of the BOP's efforts to maintain the safety of inmates.

Malone has served just over half of his 117-month term. With good time credits, his projected release date is just three years away. The time he has already served in prison has achieved much of the original sentence's purpose in terms of reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, and providing a deterrent effect. A reduction in his sentence will not override the punishment

---

[11] This factor has already been addressed above and supports release.

16

he has already been subjected to, nor will it eradicate the effects of the Court's original sentence.

Malone has spent his time in prison productively, including securing a job in UNICOR, a sought-after BOP work program. In the sixty-four months Malone has been in custody, he has had only one minor infraction—for tobacco. The BOP has assessed his risk of recidivism as minimal. Record Document 1318-2, p. 3.

The Court is concerned with Malone's access to quality medical care while in BOP custody during the pandemic. Section 3553(a)(2)(d) instructs a court to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(d). Malone is currently being denied cancer treatment because Duke is not allowing inmates at its facility. Malone is in need of a sentence that will allow him an opportunity to seek needed medical treatment.

The Court recognizes the possibility of sentencing disparities. However, to the extent a disparity would be created, the Court must adhere to the independent nature of a review for compassionate release. Hence, while the Court strives not to create unwarranted sentencing disparities, it is nonetheless obligated to independently evaluate each case presented to it for consideration.

On balance, considering the Court's familiarity with all relevant facts of this case, the Court finds the § 3553(a) factors support Malone's request for compassionate release. Malone can be released to the home of his brother, Adam Malone, an attorney in the

Atlanta, Georgia area.  Malone will undergo a fourteen-day quarantine at his brother's residence.

### III.  Conclusion

For the foregoing reasons, Malone's motion for compassionate release [Record Document 1318] be and is hereby **GRANTED**.  His sentence is reduced to a sentence of **time-served** subject to the following conditions:

1. Malone's original term of supervised release of three years and all original conditions thereof [Record Document 975] are not affected by this ruling.

2. The monetary penalties imposed upon Malone [Record Document 975] remain in effect.

3. Execution of the Court's order is **STAYED** until **June 17, 2020** to allow the Bureau of Prisons and the United States Probation Office the opportunity to make arrangements for Malone's release.

4. An amended judgment will be entered separately to reflect the amended sentence and to set forth all conditions of supervision that will apply to Malone.

5. The Clerk of Court shall provide a copy of this ruling to the Probation Office and FCI Butner Medium I.

**THUS DONE AND SIGNED** this 9th day of June, 2020.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE

18